UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IVAN G. McKINNEY,

    Plaintiff,

v.

GARY LANIGAN et al.,

    Defendants.

Civ. No. 18-309 (FLW) (LHG)

**MEMORANDUM OPINION**

## I. INTRODUCTION

Plaintiff, Ivan McKinney ("McKinney" or "Petitioner"), is a state prisoner incarcerated at New Jersey State Prison, in Trenton, New Jersey. He is proceeding *pro se* with this Complaint asserting violations of his civil rights under 42 U.S.C. § 1983, as well as various state-law claims. (*See* Compl., ECF No. 1.) The Court initially administratively terminated this action, as McKinney's Complaint included no filing fee or application to proceed *in forma pauperis*. (ECF Nos. 3 & 4.) McKinney thereafter submitted a proper *in forma pauperis* application, and the action was reopened. (ECF Nos. 9 & 12.) Also before the Court is a motion by McKinney for a temporary restraining order or preliminary injunction. (ECF No. 10.)

## II. SCREENING THE COMPLAINT

The Court must now review the complaint under 28 U.S.C. § 1915(e), 28 U.S.C. § 1915A, and 42 U.S.C. § 1997e to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit. McKinney's claims in this action revolve around the installation of a hernia mesh in his abdomen, which McKinney alleges has caused him to suffer great pain and discomfort, as well as various other side effects. (*See* ECF

No. 1.) In short, McKinney alleges that defendant Dr. Rajiv Shah, who apparently implanted the hernia mesh, violated his constitutional rights by not properly explaining the risks and potential side effects before performing the procedure. (*Id.* ¶ 4(b).) McKinney alleges that various hospital administrators, as well as an anesthesiologist and the commissioner of the New Jersey Department of Corrections, in both their official and individual capacities, should also bear liability for this failure to properly warn him of the potential side effects of the hernia mesh. (*Id.* at ECF pp. 4–5, 8–10.) Additionally, McKinney alleges a claim for products liability against defendants Bard Davol Inc. and C.R. Bard (collectively, "Bard"), the manufacturer of the specific hernia mesh he received. (*Id.* at ECF pp. 2, 5, 6, 11–12.) McKinney alleges that all acts relevant to these claims occurred on July 17, 2014, the date the hernia mesh was implanted. (*Id.* at ECF pp. 8–12.) Finally, McKinney alleges that he made repeated complaints to defendant nurse manager Mary Lang regarding the side effects of the hernia mesh, but that "she turned a blind eye" to his condition. (*Id.* at ECF p. 10.)

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review prisoner complaints when the prisoner (1) is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), (2) seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A, or (3) asserts a claim concerning prison conditions, *see* 42 U.S.C. § 1997e(c). The PLRA directs district courts to *sua sponte* dismiss claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *see also Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the Court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings, as always, will be liberally construed. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972); *Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

Here, the Court first assesses the timeliness of McKinney's claims. Causes of action under 42 U.S.C. § 1983 are subject to the same two-year statute of limitations as claims for other personal injuries under New Jersey state law. *See Patyrak v. Apgar*, 511 F. App'x 193, 195 (3d Cir. 2013) (citing *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010)); *Evans v. Gloucester Twp.*, 124 F. Supp. 3d 340, 349 (D.N.J. 2015) (citing *Pittman v. Metuchen Police Dep't*, 441 F. App'x 826, 828 (3d Cir. 2011)). Claims under New Jersey's products liability

statute are also subject to this two-year statute of limitations. *Dziewiecki v. Bakula*, 853 A.2d 234, 237 (N.J. 2004); *see also Hudson v. Siemens Logistics & Assembly Sys.*, 353 F. App'x 717, 723 (3d Cir. 2009).

Nearly all of McKinney's § 1983 claims appear to be untimely from the face of the Complaint.[1] He identifies as the relevant date of each defendants acts July 17, 2014, apparently the date the hernia mesh was installed. (*See* ECF No. 1.) He further states, "I have had severe complications to date since the product was implanted in me." (*Id.* at ECF p. 11.) Thus, the two-year limitations period for his claims related to these circumstances ended on July 17, 2016. The Complaint was received by the Clerk's Office nearly a year and a half after that, on January 9, 2018, though it included a cover letter dated December 29, 2017. (*See* ECF Nos. 1 & 1-1.) The Court will give McKinney the benefit of the doubt, as appropriate for a *pro se* litigant, and assume, under the "mailbox rule," *see Houston v. Lack*, 487 U.S. 266, 270–71 (1988), that he may have given it to prison staff for filing as early as its indicated date, December 29, 2017. Nonetheless, the vast majority of claims are still facially untimely.

In his cover letter, however, McKinney asserts that he originally sent his Complaint on July 11, 2016. (*See* ECF No. 1-1, at 2.) It reads,

> On 07-11-16 I sent this enclosed complaint in good faith and gave it to the Regular second shift officer on 2C. I handed it to the officer with a New Jersey State Prison postage remit. I believe I fully filled the prisoner's mailbox rule that says my legal mail is filed once I hand it to the officer. I have never heard from the court in Newark, at 50 Walnut Street in regards to this matter. I made copies today from a copy I had laying around. Maybe the papers got missed place [sic] in the court, or this jail never sent it out. I am now sending it to your Court here in Trenton. The District court in Trenton knows about the severe problems I had with my legal mail here at this prison: See McKinney v. George Robinson, before the Hon. Judge Freda Wolfson, and the

---

[1] The one exception to this is the § 1983 claim asserted against Mary Lang, which includes no relevant dates.

4

> Magastrate [sic] Judge Douglas Arpert. I did not contact the court in Newark because I thought everything was under control. I thought because im citing some product liability that maybe it took longer or something. Please see that this get filed at your earliest [sic]. I have enclosed a copy of the 07-11-16 proof that I send it by postage remit. I certify the forgoing [sic] by me is true, and if found to be false im subject to criminal/civil penalties.

(*Id.*) McKinney included a copy of an NJSP Postage Remit form which indicates a date of July 11, 2016 for legal mail sent to this district's Newark courthouse. (*Id.* at 1.)

McKinney's claim that he originally gave his complaint to prison staff for filing on July 11, 2016 but that it may have been lost by prison staff or by the Court potentially implicates two distinct legal doctrines: the prison mailbox rule and the doctrine of equitable tolling. In *Houston v. Lack*, 487 U.S. 266, the Supreme Court created the prison mailbox rule, designed for *pro se* prisoners, whereby a court filing will be deemed filed not when stamped received by the Clerk's office, but instead "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk." *Id.* at 275–76. In creating this rule, the Supreme Court noted that the *pro se* prisoner has no choice but to rely on the prison mail system in order to file documents with the court; such a litigant has no ability to deliver the document in person or to quickly confirm with the Clerk's Office that the document has been timely received. *See id.* The rule is typically employed in cases where the *pro se* prisoner placed a document in the prison mail system a few days before the relevant deadline and the document was not received by the Court until a few days after the deadline. *See, e.g.*, *Houston*, 487 U.S. at 268–69; *Moody v. Conroy*, 680 F. App'x 140 (3d Cir. 2017); *Coudriet v. Vardaro*, 545 F. App'x 99, 102 n.2 (3d Cir. 2013); *Paluch v. Sec'y Pa. Dep't of Corr.*, 442 F. App'x 690, 693 (3d Cir. 2011); *Terrell v. Benfer*, 429 F. App'x 74, 75 n.1 (3d Cir. 2011); *Spencer v. Beard*, 351 F. App'x 589, 590 (3d Cir. 2009).

5

McKinney's assertions here are very different from those considered in a typical prison mailbox case. This is not a situation where a prisoner placed a document in the mail shortly before a deadline and this Court received that document a few days after that deadline. Instead, McKinney claims that he originally gave his complaint for mailing to prison staff three days before his deadline but that it was *never* docketed and that, after almost a year and a half had elapsed, he mailed another copy of the complaint. (*See* ECF No. 1-1.) It appears unlikely that the *Houston* Court intended the prison mailbox rule to apply in such a distinct context, but there is support in some courts for the theory that a document may be treated as filed on the date it was delivered to prison authorities even if it is never docketed by the Court. *See Ray v. Clements*, 700 F.3d 993, 1002–13 (7th Cir. 2012); *Stoot v. Cain*, 570 F.3d 669 (5th Cir. 2009); *Allen v. Culliver*, 471 F.3d 1196 (11th Cir. 2006); *Huizar v. Carey*, 273 F.3d 1220 (9th Cir. 2001); *see also Nichols v. Coleman*, Civ. A. No. 08-cv-2445, 2010 WL 1053094, at *3 (E.D. Pa. Mar. 17, 2010). Each of these cases applied the prison mailbox rule to potentially toll the AEDPA limitations period when a prisoner claimed to have commenced a state PCR proceeding, but the state court had never received the pleading. *See Ray*, 700 F.3d at 1002–13; *Stoot*, 570 F.3d at 669–72; *Allen*, 471 F.3d at 1197–99; *Huizar*, 273 F.3d at 1222–24; *Nichols*, 2010 WL 1053094 at *3.

Without the benefit of the prison mailbox rule, there remains some possibility that McKinney's complaint could also be deemed timely by the application of the doctrine of equitable tolling. Equitable tolling under New Jersey law may arise

> where 'the complainant has been induced or tricked by his adversary's misconduct into allowing the deadline to pass,' or where a plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum.

6

*Cason v. Arie Street Police Dep't,* Civ. No. 10–497 (KSH), 2010 WL 2674399, at *5 n.4 (D.N.J. June 29, 2010) (quoting *Freeman v. State,* 788 A.2d 867, 879–80 (N.J. Super. Ct. App. Div. 2002)). The Court of Appeals for the Third Circuit has noted that "'[a] petitioner seeking equitable tolling bears the burden to show that he diligently pursued his rights and that some extraordinary circumstances stood in [the] way.'" *Hanani v. N.J. Dep't of Evnt'l Protection*, 205 F. App'x 71, 77 (3d Cir. 2006) (quoting *Satterfield v. Johnson*, 434 F.3d 185, 188 (3d Cir. 2006)). Thus, there is an argument to be made that equitable tolling should apply to the circumstances McKinney alleges, but is unclear how his decision to wait nearly 18 months after sending the Complaint to follow up in any manner could equate to diligent pursuit of his rights.

In any case, however, the argument that McKinney's Complaint should be considered timely faces a larger hurdle than his seeming lack of diligence, namely, the very credibility of his assertions. McKinney is a frequent litigator in this district, and a simple review of his cases reveals a troubling pattern. He has asserted in at least four of his recent actions before this Court, including this one, that he gave his complaint to prison officials for mailing at an earlier date, falling before the applicable statute of limitations expired, but that the pleading was never docketed. *See McKinney v. Fitzgerald*, Civ. A. No. 18-12987 (FLW) (LHG), ECF No. 1-3; *McKinney v. Lanigan*, Civ. A. No. 18-8618 (FLW) (LHG), ECF No. 1, at 1; *McKinney v. Campos*, Civ. A. No. 16-4460 (FLW) (DEA), ECF No. 1, at 1. In each of these cases he either references or includes a postage remit as evidence that he delivered his pleading for mailing at some earlier date. In each instance, however, there is evidence suggesting that the postage remit in question was in fact used to send some other document to the Court, which was timely received and docketed.

In *McKinney v. Campos*, Civ. A. No. 16-4460, the Court received McKinney's complaint on July 14, 2016. McKinney included a cover letter dated July 11, 2016, which asserted,

> I sent this package initially on 03-21-16. I did not receive any confirming documents that the court received such. I am re-submitting these documents on this day. I thank you for your time in this matter. My initial package was given to Officer Cherry on Unit 4-A on 03-21-16. And today im giving this package to desk officer Early and his partner on unit 4-C second shift. My legal mail has been tampered with so much I don't know what actually gets to its destination.

Civ. A. No. 16-4460, ECF No. 1 at 1. In support of his assertion that he originally mailed his complaint on March 21, 2016, McKinney included an NJSP Postage Remit, dated "03-21-16," which indicates that he sent legal mail to "U.S. District Court Attn. Clerks Office – Hon. Magastrate [sic] James B. Clark 50 Walnut St. Newark NJ 07101." *Id.*, ECF No. 1-2. The remit was witnessed by "M. Cherry." *Id.* This remit coincides exactly with a letter that McKinney sent in a case that remains pending in the Newark vicinage in which Judge Clark is the assigned Magistrate Judge. *See McKinney v. Holmes*, Civ. A. No. 14-3563 (KM) (JBC), ECF No. 16. That letter is dated "03-21-16" and is addressed to "Attn. Clerk's Office - Hon. Magastrate [sic] James B. Clark." *Id.* It was received and docketed on March 28, 2016. (*Id.*) It is inexplicable, and rather incredulous, why McKinney would have sent a new pleading commencing a new action to the attention of Magistrate Judge Clark, as the alleged remit indicates.

Similarly, in *McKinney v. Lanigan*, Civ. A. No. 18-8618, the Court received McKinney's complaint on April 23, 2018. That complaint asserted claims arising from incidents that occurred in November and December 2015, indicating that the two-year limitations period for his § 1983 claims would generally have expired by the end of 2017. *See* Civ. A. No. 18-8618, ECF No. 1. McKinney included a cover letter with that complaint dated April 17, 2018, which read, "I am resubmitting this complaint because I never heard back from the Court. I initially filed this

8

complaint 03-19-17[2] by Postage Remit. I have had a lot of problems with legal mail here and may have gotten lost [sic]." Civ. A. No. 18-8618, ECF No. 1 at 1. This filing included no postage remit as an exhibit, but the alleged date of his original filing seems to coincide precisely with a letter he sent this Court in *McKinney v. Campos*, Civ. A. No. 16-4460, which was received by the Court on March 22, 2017, in an envelope postmarked March 20, 2017. *See* Civ. A. No. 16-4460, ECF No. 22.

In *McKinney v. Fitzgerald*, Civ. A. No. 18-12987, the Court received McKinney's complaint on August 17, 2018. That complaint asserted claims arising from incidents that mostly occurred in March 2015, indicating that the two-year limitations period for his § 1983 claims would generally have expired in March 2017. *See* Civ. A. No. 18-12987, ECF No. 1. McKinney included a cover letter with that complaint dated August 13, 2018, which read,

> I filed this case on 05-12-16 in good faith! I filed this at New Jersey State Prison on unit 4-C in good faith. As-per the prisoner's mailbox rule in Houston v. Lack and other cases, The U.S. Supreme Court said that my mail is filed when I hand it to the officer. I am refiling this action today 08-13-18 in good Faith certified mail. I have enclosed my 05-12-16 Receipt in which I originally filed.

Civ. A. No. 18-12987, ECF No. 1-3. In support of his assertion that he originally mailed his complaint on May 12, 2016, McKinney included an NJSP Postage Remit, dated "05-12-16," which indicates that he sent legal mail with a postage cost of $1.57. *Id.*, ECF No. 1-5. This remit coincides exactly with a motion that McKinney sent in another case he has pending in the Newark vicinage. *See McKinney v. Hemsley*, Civ. A. No. 14-3564 (KM) (JBC), ECF No. 35. A cover letter included with the motion is dated "05-12-16," and the motion was received and docketed on May 16, 2016. *See id.*, ECF No. 35-2. The envelope for this motion is postmarked

---

[2] In this letter McKinney seems to have written the date "03-19-17" over an original listed date of "03-10-17." *See* Civ. A. No. 18-8618, ECF No. 1 at 1.

9

May 13, 2016 and bears postage for $1.57—the same amount indicated on the postage remit that supposedly reflects the mailing of McKinney's complaint, on the same day, in Civil Action 18-12987. *See id.* at 3. I note that the complaint in Civil Action 18-12987, which McKinney alleges he originally filed on May 12, 2016, also inexplicably alleges in its claim against Antonio Campos that he was the acting administrator on "03-28-<u>18</u>." Civ. A. No. 18-12987, ECF No. 1 at ECF p. 9 (emphasis added).

The circumstances in this action are entirely consistent with the untoward pattern that exists in McKinney's other cases. As already noted, the Court received McKinney's complaint on January 9, 2018, and the Complaint asserts claims arising from surgery McKinney underwent on July 17, 2014, indicating that the two-year limitations period for the bulk of his claims expired in July 2016. (*See* ECF No. 1.) McKinney's cover letter, quoted in full above, was dated December 29, 2017, but alleged that McKinney had previously mailed the complaint to the Court on July 11, 2016. (ECF No. 1-1 at 2.) He again included a postage remit, which was dated "07-11-16" and which indicates postage in the amount of $2.20. (ECF No. 1-1 at 1.) The pattern comes full circle, because this remit coincides exactly with the supposed resubmission of McKinney's complaint in Civil Action 16-4460 (which he then claimed he had previously sent several months earlier). The cover letter for that complaint is dated "07-11-16," Civ. A. No. 16-4460, ECF No. 1 at 1, and the envelope for that filing is postmarked July 12, 2016 and appears to bear postage in the amount of $2.20, the same amount indicated on the postage remit, Civ. A. No. 16-4460, ECF No. 1-3.

This pattern casts grave doubt on all of McKinney's representations regarding his efforts to file complaints in a timely fashion. Even were the Court to accept McKinney's assertions that he has recurring problems with his legal mail, the evidence reviewed above, if taken at face

value, would require the Court to believe that each time McKinney attempted to mail a complaint that disappeared without a trace, he simultaneously mailed another document to the Court, sometimes bearing the exact same postage amount, which was promptly mailed, received by the Clerk's Office, and docketed. If McKinney is alleging tampering by prison staff with his legal mail, it is unclear how or why the staff would, in each instance, have prevented the mailing of a complaint to the court but, at the exact same time, would have promptly forwarded McKinney's other legal mail (which, in one instance, was another complaint). These supposed circumstances strain credulity.

Furthermore, contrary to McKinney's constant assertions that he placed his documents in the mail in good faith, this pattern of filings strongly indicates that he has been acting in bad faith. The prison mailbox rule and the doctrine of equitable tolling exist for the purpose of ensuring that *pro se* prisoner litigants are not unfairly disadvantaged by the inherent limitations of their circumstances. They are intended to ensure that prisoners receive a *fair* shot at litigating their claims despite the disadvantages and unavoidable obstacles that derive from their incarceration. These doctrines are *not*, however, meant to be abused by prisoners to sidestep the statutes of limitations that apply to their claims.

The Court thus orders McKinney to show cause why his Complaint in this action should not be dismissed as untimely. Given the implausible coincidences revealed by reviewing McKinney's filings herein and in other cases, he will bear a difficult burden of proving to the Court not only that he in fact originally filed his complaint on July 11, 2016, but that, even if he did, that such an attempted filing is sufficient to deem his refiling nearly18 months later to be timely. McKinney is well advised that he certified the facts in his cover letter to be true subject to criminal penalties. (*See* ECF No. 1-1 at 2.) Indeed, perjury is not a crime that is taken lightly

by this Court. In that regard, in light of these issues, the Court does not undertake any screening of the merits of McKinney's claims until the timeliness questions are resolved.

### III. MOTION FOR TEMPORARY RESTRAINING ORDER

McKinney also has pending before the Court a motion for a temporary restraining order or preliminary injunction. (ECF No. 10.) To justify the extraordinary relief of a preliminary injunction, a plaintiff must demonstrate (1) a likelihood of success on the merits, (2) that denial would cause irreparable harm to the plaintiff, (3) that granting the injunction would not cause irreparable harm to the defendant, and (4) that the injunction would be in the public interest. *See Maldonado v. Houston,* 157 F.3d 179, 184 (3d Cir. 1998). The same standard applies to temporary restraining orders. *See Ballas v. Tedesco,* 41 F. Supp. 2d 531, 537 (D.N.J. 1999). A plaintiff must show that all four factors weigh in favor of an injunction or temporary restraining order. *See Opticians Ass'n of Am. v. Indep. Opticians of Am.,* 920 F.2d 187, 192 (3d Cir. 1990). Such preliminary relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (internal quotation marks omitted).

A temporary restraining order or preliminary injunction grants "intermediate relief of the same character as that which may be granted finally." *See De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945). As indicated by the test for granting a preliminary injunction, "there must be 'a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'" *Ball v. Famiglio*, 396 F. App'x 836, 837–38 (3d Cir. 2010) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)). Furthermore, a preliminary injunction may bind only the parties, their agents, or other persons acting in concert with them. *See* Fed. R. Civ. P. 65(d)(2)(A)–(C). The Court of Appeals for the Third Circuit has noted that a request for

injunctive relief is "legally deficient" when it is "targeted at potential conduct that bears no relation to his underlying claim." *Martin v. Keitel*, 205 F. App'x 925, 928–29 (3d Cir. 2006); *see also Ball*, 396 F. App'x at 837–38.

McKinney seeks a temporary restraining order and preliminary injunction against defendants Lanigan and Lang enjoining them from harassing or retaliating against McKinney for filing lawsuits or grievances, opening his legal mail, delaying or denying medical treatment, and failing to send him for "hernia revision surgery." (ECF No. 10.) In support of his motion, McKinney alleges that he has been retaliated against by prison medical staff and has been denied hernia surgery. (*See* ECF No. 10-1.) He devotes most of his supporting declaration, however, to allegations that he has received "bogus charges" and otherwise been retaliated against by prison investigators and other prison staff in response to grievances McKinney has filed. (*Id.*)

The extraordinary relief of a temporary restraining order or preliminary injunction is not warranted by McKinney's motion. First, the bulk of McKinney's motion seeks relief from alleged retaliation for his grievance filings—relief that is unrelated to the Complaint's allegations that McKinney did not receive proper warning of the risks of a hernia mesh. Thus, it improperly seeks preliminary relief that is *not* "of the same character as that which may be granted finally." *See De Beers Consol. Mines*, 325 U.S. at 220. Furthermore, as it presently appears that McKinney's Complaint is almost entirely barred by the statute of limitations, he has failed to show that there is a likelihood of success on the merits. Nor has he established that the denial of preliminary relief related to his claims would cause him irreparable harm. As it is clear that McKinney has failed to meet his burden of showing that the factors weigh in favor of granting preliminary relief, his motion for a temporary restraining order or preliminary injunction is denied.

## IV.  CONCLUSION

For the reasons explained above, McKinney's motion for a temporary restraining order or preliminary injunction, (ECF No. 10), is denied.  Furthermore, upon screening the Complaint, the Court orders McKinney to show cause within 30 days why his Complaint should not be dismissed as untimely.  An appropriate order follows.

/s/ Freda L. Wolfson
FREDA L. WOLFSON
United States District Judge
