**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

IVAN G. McKINNEY,                                                    :
                                                                     :
                              Plaintiff,                             :          Civ. No. 18-309 (FLW) (LHG)
                                                                     :
             v.                                                      :
                                                                     :
GARY LANIGAN et al.,                                                 :          **MEMORANDUM OPINION**
                                                                     :
                              Defendants.                            :
_____                           :


      This matter has been opened to the Court by Plaintiff Ivan McKinney's (McKinney or

Plaintiff) response to the Court's Order to Show Cause requiring him to show cause as to why

his Complaint should not be dismissed in part as untimely.  *See* ECF Nos. 15, 19-20.  Federal law

requires this Court to screen Plaintiff's Complaint for sua sponte dismissal prior to service, and

to dismiss any claim if that claim fails to state a claim upon which relief may be granted under

Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit.  *See* 28

U.S.C. § 1915(e)(2)(B).  For the reasons explained below, the federal claims in the Complaint

brought pursuant to 42 U.S.C. § 1983 are dismissed under § 1915(e), and the Court declines

supplemental jurisdiction over the state law claims at this time.  To the extent Plaintiff can cure

the deficiencies in those claims the Court has dismissed without prejudice, he may submit an

Amended Complaint within 45 days in accordance with this Memorandum Opinion.

### I.      FACTUAL BACKGROUND

      As recounted in the Court's prior opinion, McKinney is a state prisoner at New Jersey

State Prison and his claims in this action revolve around a surgery to install hernia mesh in his

abdomen on July 17, 2014.  Plaintiff alleges that the hernia mesh is defective and has caused him

to suffer great pain and discomfort, as well as various other side effects.  *See* ECF No. 1.

Plaintiff alleges that Defendant Dr. Rajiv Shah, the doctor who apparently implanted the hernia

mesh, violated his Eighth Amendment rights by not properly explaining the risks and potential

side effects prior to performing the procedure.  *Id.* ¶ 4(b).  McKinney also alleges that various

hospital administrators, as well as an anesthesiologist and the commissioner of the New Jersey

Department of Corrections, in both their official and individual capacities, should also bear

liability for this failure to properly warn him of the potential side effects of the hernia mesh prior

to the surgery on July 17, 2014.  *Id.* at pp. 4–5, 8–10.  Additionally, McKinney alleges a state

law claim for products liability against defendants Bard Davol Inc. and C.R. Bard (collectively,

"Bard"), the manufacturer of the specific hernia mesh he received.  *Id.* at pp. 2, 5, 6, 11–12.  The

alleged misconduct by the above Defendants occurred on or before July 17, 2014, the date of the

surgery implanting the hernia mesh.  *Id.* at pp. 8–12.  Finally, McKinney alleges that he made

repeated complaints to Defendant nurse manager Mary Lang and/or her subordinates regarding

the side effects of the hernia mesh after the surgery, but that "she turned a blind eye" to his

condition.  *Id.* at pp. 10.

## II.      STANDARD OF REVIEW

The legal standard for dismissing a complaint for failure to state a claim pursuant to 28

U.S.C. § 1915(e)(2)(B)(ii) is the same as the standard for dismissing a complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir.

2012).  That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544 (2007).  To survive the Court's screening for failure to state a

claim, the complaint must allege "sufficient factual matter to show that the claim is facially

plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation

marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings must be liberally construed.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017).  Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III.   ANALYSIS

The Court construes Plaintiff to assert federal claims under 42 U.S.C. § 1983 as well as state law claims. The Court begins with the federal claims.

### a.  Official Capacity Claims for Damages

Plaintiff states that he is suing Defendants in their official and individual capacities. With respect to the § 1983 claims, the Court dismisses <u>with prejudice</u> all official capacity claims for damages, as neither a State nor its officials acting in their official capacities are "persons" under § 1983.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

### b.  Supervisory Claims for Inadequate Medical Care Against Defendant Lang

The Court next addresses the § 1983 claims against Defendant Mary Lang in her personal supervisory capacity, which the Court construes as Eighth Amendment claims for inadequate medical care.  The Constitution requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing

*Estelle v. Gamble*, 429 U.S. 97 (1976)).  For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse*, 182 F.3d at 197.

The test for "deliberate indifference" requires that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Allegations of negligent treatment or medical malpractice do not trigger constitutional protections.  *Estelle*, 429 U.S. at 105-06.  Thus, to demonstrate the deliberate indifference prong of *Estelle*, a plaintiff must show that a defendant was more than merely negligent, and mere medical malpractice or disagreement with the proper treatment of an illness cannot give rise to a violation of the Eighth Amendment.  *White v. Napoleon*, 897 F.2d 103, 108 (3d Cir. 1990); *see also Rouse*, 182 F.3d at 197.  The Court of Appeals has concluded that the deliberate indifference standard is met "when prison officials 1) deny reasonable requests for medical treatment, and the denial exposes the inmate to undue suffering or the threat of tangible residual injury, 2) delay necessary medical treatment for non-medical reasons, or 3) prevent an inmate from receiving recommended treatment for serious medical needs, or deny access to a physician capable of evaluating the need for treatment."  *Whooten v. Bussanich*, 248 F. App'x. 324, 326–27 (3d Cir. 2007) (citing *Monmouth v. Lanzaro*, 834, F.2d 326, 346–47 (3d Cir. 1987); *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993)).  The Third Circuit has also held that prison officials who continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm act with deliberate indifference.  *See Rouse*, 182 F.3d at 197; *White*, 897 F.2d at 109.  "A medical need is

serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'"  *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987))).

Plaintiff alleges generally that Defendant Lang ignored his complaints about the side effects of the hernia mesh—primarily severe constipation and pain—and also ignored the number of times he was seen by her subordinates for these side effects.  Plaintiff also generally asserts that Defendant Lang knew that the medical community knew about recalls of the hernia mesh and further asserts that Defendant Lang did not send him back to the surgeon for possible removal of the mesh.  Plaintiff appears to allege that that he wrote grievances and had his attorney write letters, presumably about his side effects from the hernia mesh, but it is not clear whether these letters and grievances were directed to Defendant Lang.  With respect to these allegations, Plaintiff asserts that Defendant Lang is liable as a supervisor for failing to supervise and train her subordinates and through her knowledge of and acquiescence in their alleged violations of Plaintiff's rights.  Plaintiff also contends that Defendant Lang is liable under a theory of respondeat superior.  *See* Complaint at 10.

From the outset, Defendant Lang may not be held liable under a theory of respondeat superior for the violations of her subordinates.  It is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988); *Batts v. Giorla*, 550 F. App'x. 110, 112  (3d Cir. 2013).  Furthermore, § 1983 liability context, requires a "showing of direct responsibility" by the named defendant

and eschews any "theory of liability" in which defendants played "no affirmative part in depriving any[one] ... of any constitutional rights," *Rizzo v. Goode*, 423 U.S. 362, 376–77, (1976)—including theories of vicarious or respondeat superior liability, *see Iqbal*, 556 U.S. at 676; *see also Merklin v. United States*, 788 F.2d 172, 175 (3d Cir. 1986).  Instead, "[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  "Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677 (emphasis added).  The Court, therefore, dismisses with prejudice the § 1983 claims against Defendant Lang premised on respondeat superior liability.

Plaintiff also asserts that Defendant Lang is liable as a supervisor for failing to supervise and train her subordinates and for having knowledge of and acquiescing in their misconduct. The Court addresses both types of supervisory liability in turn.

"Failure to" claims, i.e., failure to train, failure to discipline, failure to supervise, are generally considered a subcategory of policy or practice liability. *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316–17 (3d Cir. 2014).  To hold an official liable on a claim for failure to supervise based on a policy or practice, a plaintiff "must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 766 F.3d at 317; *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir.1989).

In addition, "[t]he Third Circuit permits § 1983 claims to proceed based on a theory of supervisory liability where a plaintiff can show defendants had knowledge of their subordinates' violations and acquiesced in the same." *Campbell v. Gibb*, No. CIV. 10-6584 JBS, 2012 WL 603204, at *10 (D.N.J. Feb. 21, 2012) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)).  To impose liability on a supervisory official there must be "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate." *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 673 (3d Cir. 1988).  Allegations of actual knowledge and acquiescence must be made with particularity.  *Rode*, 845 F.2d at 1207.

Plaintiff's allegations that Defendant Lang failed to train and supervise her subordinates who treated Plaintiff's after his surgery are conclusory, and there no facts to suggest that the need for additional training or supervision was obvious or necessitated by a pattern of prior incidents.  Moreover, Plaintiff provides no facts about the type of training or supervision needed or how the lack of specific training and/or supervision led to the constitutional violations.  The allegations in the Complaint regarding Defendants Lang's "knowledge and acquiescence" in the denial of medical care are also conclusory.  It is not clear if Defendant Lang had contemporaneous knowledge of the instances in which her subordinates treated Plaintiff for side effects following his hernia surgery or how Plaintiff's constitutional rights were violated through their care.[1]  Plaintiff complains generally that his complaints about side effects were "ignored," but he acknowledges that he was seen by prison medical staff numerous times for those side effects and provides no specific examples of how he was denied care or provided ineffective care

---

[1] Indeed, it is not clear if Defendant Lang participated in his care at all.

7

after his surgery.  He states only that he should have received a consultation with the surgeon who performed the surgery for possible removal of the mesh, but this allegation, without more, amounts to a disagreement about the course of treatment and does not rise to the level of a constitutional violation.  Finally, his allegations that Defendant Lang knew about a recall of the hernia mesh are vague and conclusory and lack sufficient factual support.

For these reasons, the Court will dismiss <u>without prejudice</u> the Eighth Amendment § 1983 claims for inadequate medical care against Defendant Lang.  Because it is possible that Plaintiff could plead additional facts to state a § 1983 claim against Defendant Lang in her supervisory capacity, he may submit an Amended Complaint within 45 days to the extent he can cure the deficiencies in his claims.

### c.  Eighth Amendment § 1983 Claims Arising from the July 17, 2014 Surgery

The Court next considers the remaining Eighth Amendment § 1983 claims arising from the failure to warn him about the side effects and/or defective nature of the hernia mesh prior to his surgery on July 17, 2014.

A District Court can raise the issue of the statute of limitations sua sponte at the screening stage.  *See Hunterson v. Disabato*, 532 F. App'x 110, 111-12 (3d Cir. 2007) ("[A] district court may sua sponte dismiss a claim as time-barred under 28 U.S.C. § 1915A(b)(1) where it is apparent from the complaint that the applicable statute of limitations has run.").  As explained in the Court's prior Opinion, Plaintiff's civil rights claims appear to be untimely from the face of the Complaint, as it was filed well beyond the two-year limitations period for civil rights claims.[2]

---

[2]  The § 1983 claims asserted against Mary Lang appear to involve alleged inadequate treatment for the side effects of the hernia mesh, and no relevant dates are provided.  To the extent Plaintiff also sues Defendant Mary Lang for failing to warn him about the side effects and/or defective nature of the hernia mesh, those claims are subject to the analysis in this section.

The Court first addresses the application of the prisoner mailbox rule and next addresses the statute of limitations.

### 1. Prisoner Mailbox Rule

In his cover letter to the Clerk of the Court submitted with his Complaint, Plaintiff attempts to rely on the prisoner mailbox rule and states that he originally submitted his complaint to prison officials for mailing on July 11, 2016.  *See* ECF No. 1-1.  He apparently did not follow up about the docketing of his Complaint until December 29, 2017, when he allegedly remailed the Complaint.  With his cover letter, Plaintiff also included a postage remit in the amount of $2.20 for unspecified legal mail that was sent to the Newark (as opposed to Trenton) Vicinage on July 11, 2016.

In response to McKinney's Complaint and cover letter, this Court issued an Order to Show Cause as to why his claims should not be dismissed as untimely.  Plaintiff sought an extension of time to respond, which was granted by the Court.  *See* ECF Nos. 16-17.  In response to the Order to Show Cause issued by this Court, Plaintiff appears to assert that he is waiting on Open Public Records Act ("OPRA") receipts in order to show that he handed this Complaint to prison officials on July 11, 2016, but, as of this date, he has not provided any additional evidence showing that he handed this Complaint to prison officials on July 11, 2016.

In the absence of such evidence, the Court declines to apply the prisoner mailbox rule in screening the Complaint.  The federal "prisoner mailbox rule" provides that a pro se prisoner's submission is generally deemed filed "at the time [the inmate] delivered it to the prison authorities for forwarding to the court clerk."  *Houston v. Lack*, 487 U.S. 266, 275–76 (1988). Although the doctrine arose in the context of habeas corpus petitions, the Third Circuit has extended it to civil actions brought under 42 U.S.C. § 1983.  *See Pearson v. Secretary Dep't of*

*Corr.*, 775 F.3d 598, 600 n.2 (3d Cir. 2015) (applying rule in section 1983 action and determining that pro se prisoner plaintiff filed complaint on date he signed it).  As noted by this Court in its prior Opinion, the rule applies where a habeas petition or civil complaint is handed to prison officials near the expiration of the limitations period but is not received by the Court until days or weeks later.  For instance, in *Pearson*, the plaintiff's complaint was signed on February 28, 2009 and received by the court on March 3, 2009, and he received the benefit of the earlier filing date.  *See id.*

Here, Plaintiff stretches the prisoner mailbox rule beyond its limits, and his attempt to utilize the prisoner mailbox rule in this action fails for the following reasons: 1) he is a frequent litigator with numerous pending cases in this Court and has not provided sufficient proof that the postage remit dated July 11, 2016 was for the Complaint in this action rather than for legal mail for a different action pending in this Court or another court; 2) the Complaint Plaintiff claims to have mailed on July 11, 2016 was never received by the Clerk of the Court; and 3) Plaintiff failed to follow up about the whereabouts of the Complaint he allegedly mailed for approximately eighteen months.[3]  The Court declines to apply the prisoner mailbox rule under these circumstances and will next address the statute of limitations.

### 2.  Statute of Limitations

While a plaintiff is not required to plead that the claim has been brought within the statute of limitations, *Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002), the Supreme Court observed in *Jones v. Bock*, 549 U.S. 199, 215 (2007), that if the allegations of a complaint, "show that relief

---

[3] Indeed, the July 11, 2016 postage remit appears to be for a Complaint he submitted in *McKinney v. Robinson*, Civ. Act. No. 16-4460, which is currently pending before this Court but was mailed to the Newark Vicinage.  *See* ECF No. 1.  As the Court noted in its prior Opinion, Plaintiff also asserts that he mailed the Complaint in *McKinney v. Robinson* months earlier on March 21, 2016.  *See id.*

is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure

to state a claim." The same principle applies to screening complaints under the PLRA. *See*

*Whitenight v. Commonwealth of Pennsylvania State Police*, 674 F. App'x. 142, 144 (3d Cir.

2017) ("When screening a complaint under § 1915, a district court may *sua sponte* dismiss the

complaint as untimely under the statute of limitations where the defense is obvious from the

complaint and no development of the factual record is required."); *Paluch v. Secretary*

*Pennsylvania Dept. of Corrections*, 442 F. App'x. 690, 694 n. 2 (3d Cir.2011) ("Although the

statute of limitations applicable to § 1983 actions is an affirmative defense, which may be

waived by the defendant, it is appropriate to dismiss *sua sponte* under § 1915(e)(2) a complaint

whose untimeliness is apparent from the face of the record"); *McPherson v. United States*, 2010

WL 3446879 at *4 (3d Cir. Sept.2, 2010) ("[W]hen a statute-of-limitations defense is apparent

from the face of the complaint, a court may *sua sponte* dismiss the complaint pursuant to 28

U.S.C. § 1915 or 28 U.S.C. § 1915A"); *see also Archie v. City of Newark*, No. CIV. 12–3657

FSH, 2012 WL 2476229, at *3 (D.N.J. June 27, 2012) (dismissing complaint as time barred

under sua sponte screening authority).

Under New Jersey law, there is a two-year statute of limitations period for personal-

injury torts. N.J. Stat. Ann. § 2A:14–2. Because a § 1983 claim is characterized as a personal-

injury claim, such claims are governed by the applicable state's statute of limitations for

personal-injury claims. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *see also Cito v.*

*Bridgewater Township Police Dept.*, 892 F.2d 23, 25 (3d Cir. 1989).

The limitation period begins to run on the accrual date, which is governed by federal law.

*Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Under federal law, a claim accrues when the

facts which support the claim reasonably should have become known to the plaintiff. *Sameric*

*Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998); *Cetel v. Kirwan Fin. Grp.. Inc.*, 460 F.3d 494, 507 (3d Cir. 2006) (quoting *Mathews v. Kidder Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001)); *see also Large v. County of Montgomery*, 307 F. App'x. 606, 606 (3d Cir. 2009). "The determination of the time at which a claim accrues is an objective inquiry; [courts] ask not what the plaintiff actually knew but what a reasonable person should have known." *Kach*, 589 F.3d at 634. Importantly, accrual is not tied to whether the potential claimant knew or should have known that the injury constitutes a legal wrong. *Giles v. City of Philadelphia*, 542 F. App'x. 121, 123 (3d Cir. 2013) (citing *Sandutch v. Muroski*, 684 F.2d 252. 254 (3d Cir. 1982)). Rather, "a cause of action accrues when the fact of injury and its connection to the defendant would be recognized by a reasonable person." *Kriss v. Fayette Cty.*, 827 F. Supp. 2d 477, 484 (W.D. Pa. 2011) aff'd, 504 F. App'x. 182 (3d Cir. 2012) (emphasis added). Accordingly, "[a]s a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Kach*, 589 F.3d at 634. Furthermore, "the rule that a cause of action accrues upon discovery of the injury does not require that a plaintiff have identified every party who may be liable on its claim." *Graff v. Kohlman*, 28 F. App'x. 151, 154 (3d Cir. 2002) (citing *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1125 (3d Cir. 1997)).

In his Complaint, Plaintiff alleges that Defendant Shah, the surgeon who implanted the hernia mesh, knowingly violated his Eighth Amendment rights by not properly explaining the risks and potential side effects of the allegedly defective hernia mesh prior to performing the surgery. *Id.* ¶ 4(b). McKinney also alleges that various entities and hospital administrators, as well as an anesthesiologist and the commissioner of the New Jersey Department of Corrections also knowingly failed to warn him about the side effects of the hernia mesh prior to the surgery

on July 17, 2014 and permitted Dr. Shah to perform the surgery without these warnings. *Id.* at pp. 4–5, 8–10.   Plaintiff's Complaint frames his injury as occurring on July 17, 2014, when the hernia mesh was implanted and asserts that the Defendants knowingly failed to warn him of these dangers prior to that date.   As such, Plaintiff's remaining civil rights claims appear untimely and shall be dismissed <u>without prejudice</u> pursuant to the Court's screening authority under 28 U.S.C. § 19159(e)(2)(B).

It is possible that Plaintiff may be entitled to equitable tolling, the discovery rule, or other theory which could delay accrual or extend the limitations period.[4]   But supporting facts for tolling or delayed accrual would need to be included in his Complaint.   Courts that have considered the issue have found that it is necessary to plead the doctrine or facts in support thereof where the claims are facially untimely.   *See, e.g., Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391 n. 10 (3d Cir.1994) (reviewing the dismissal of a claim as untimely

---

[4] Under federal law, tolling is extraordinary relief that is appropriate only "in three general scenarios: (1) where a defendant actively misleads a plaintiff with respect to his or her cause of action; (2) where the plaintiff has been prevented from asserting his or her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts his or her claims in a timely manner but has done so in the wrong forum." *Lake v. Arnold*, 232 F.3d 360, 370, n.9 (3d Cir. 2000).

The discovery rule postpones a claim from accruing if a plaintiff is reasonably unaware that he has suffered an injury or, even though he is aware of the injury, that it was the fault of an identifiable person. *See Caravaggio v. D'Agostini*, 166 N.J. 237, 765 A.2d 182, 187 (2001). Under New Jersey law, the discovery rule is used in special circumstances and where the interests of justice require in order "to postpone the accrual of a cause of action when a plaintiff does not and cannot know the facts that constitute an actionable claim." *Grunwald v. Bronkesh*, 131 N.J. 483, 492 (1993); *see also Jonas v. Gold*, 627 F. App'x. 134, 139 (3d Cir. 2015) (explaining that New Jersey's "discovery rule postpones the accrual date of a cause of action 'until the injured party discovers or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim.'" (quoting *Lopez v. Swyer*, 62 N.J. 267, 300 A.2d 563, 565 (1973)). Application of the rule starts the limitations period once a plaintiff is aware of "the facts underlying" the injury and fault, as opposed to "when a plaintiff learns the legal effect of those facts." *Id.* at 493.

and stating "[w]e do not apply this doctrine to Oshiver's failure to hire claim, however, because

nowhere in the complaint does Oshiver allege that the law firm misled her, actively or otherwise,

with respect to this claim. Accordingly, there is no basis for the application of the equitable

tolling doctrine.") (emphasis added); *see also Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435

F.3d 989, 991 (9th Cir.) (stating that "federal courts have repeatedly held that plaintiffs seeking

to toll the statute of limitations on various grounds must have included the allegations in their

pleadings….").

     Within 45 days, Plaintiff may file an Amended Complaint with respect to the § 1983

claims dismissed on the basis of timeliness if he can provide facts to support equitable tolling,

the discovery rule, and/or continuing violation.  If he has additional facts or evidence to support

the application of the prisoner mailbox rule, he may also include those facts or evidence in the

Amended Complaint.

### d.  The Court Declines Supplemental Jurisdiction Over the State Law Claims

     Finally, the Court addresses Plaintiff's state law claims for product liability.[5]  Where a

district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and

---

[5] The Court does not construe Plaintiff to assert jurisdiction for his state law claims under 28 U.S.C. § 1332, which provides jurisdiction over state law claims if the matter in controversy exceeds the sum or value of $75,000 and is between "citizens of different states." 28 U.S.C. § 1332.  "A plaintiff, as the party asserting diversity jurisdiction, 'must specifically allege each party's citizenship, and these allegations must show that the plaintiff and defendant are citizens of different states.'"  *Molley v. Tesche*, No. 13–3770, 2014 WL 2887824, at *2 (D.N.J. June 25, 2014) (quoting *American Motorists Ins. Co. v. American Employers' Ins. Co.*, 600 F.2d 15, 16 (5th Cir. 1979)); *see also Gay v. Unipack, Inc.*, No. 10–6221, 2011 WL 5025116, at *4 (D.N.J. Oct.20, 2011).  There must be complete diversity among the parties—*i.e.*, no plaintiff may be a citizen of the same state as any defendant.  *See Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir.2003) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 197, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990)).  "For inmates, citizenship for diversity purposes is the state in which the inmate was domiciled prior to incarceration, unless the inmate plans to live elsewhere when he is released in which event citizenship would be that state." *McCracken v. Murphy*, 328 F.Supp.2d 530, 532 (E.D. Pa. 2004) (citations

supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  It appears Plaintiff is seeking to bring state law claims for product liability, and the Court declines supplemental jurisdiction at this time, as it has dismissed without prejudice the federal claims.[6]

## IV.  <u>CONCLUSION</u>

The Complaint is dismissed in its entirety pursuant to the Court's screening authority under § 1915(e).  The § 1983 claims against Defendants in their official capacity for damages are dismissed <u>with prejudice</u>.  The § 1983 claims against Defendant Lang premised on respondeat superior liability are also dismissed <u>with prejudice</u>.  The remaining § 1983 claims are dismissed <u>without prejudice</u>, and the Court declines supplemental jurisdiction over the state law claims because it has dismissed the federal claims.  At this time, the Court will administratively terminate this matter and permit Plaintiff to submit an Amended Complaint within 45 day in accordance with this Memorandum Opinion.  An appropriate Order follows.

DATED: January 28, 2021

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge

---

omitted), *aff'd by*, 129 F. App'x 701 (3d Cir.2005) (per curiam); *see also Molley*, 2014 WL 2887824, at *3.  Here, however, Plaintiff does not specifically allege each party's citizenship or the amount in controversy and, thus, cannot rely on §1332 to establish jurisdiction over his state law claims.  *See e.g., Grohs v. Santiago*, 13-3877, 2014 WL 4657116, at *10–11 (D.N.J. Sept. 17, 2014) (declining to find jurisdiction pursuant to § 1332 where plaintiffs failed to specifically allege each party's citizenship).  The remaining basis for jurisdiction over the state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as explained in this section.

[6] If Plaintiff files an amended complaint and states one or more federal claims for relief, the Court will address whether he has also stated any state law claims for relief at that time.